UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

ELIZABETH A. SHADLE, :
:
    Plaintiff : Civil Action No. 4:11-CV-657
:
vs. : (Judge Nealon)
:
MICHAEL ASTRUE, :
COMMISSIONER OF SOCIAL :
SECURITY, :
:
    Defendant :

MEMORANDUM AND ORDER

## Background

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") which denied Plaintiff Elizabeth A. Shadle's request for review of the administrative law judge's decision of June 29, 2010, which dismissed her request for a hearing on her application for disability insurance benefits.

On October 28, 2008, Shadle protectively filed[1] with the Social Security Administration an application for disability

---

1. Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits. A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

insurance benefits and an application for supplemental security income benefits. Tr. 90, 92 and 133-143.[2]

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." It is undisputed that Shadle met the insured status requirements of the Social Security Act through March 31, 2008.

Supplemental security income is a federal income supplement program funded by general tax revenues (not social security taxes). It is designed to help aged, blind or other disabled individuals who have little or no income. Insured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits. However, there are other eligibility requirements relating to an applicant's financial situation which must be met.

Shadle alleged that she became disabled on December 5, 2007 (hereinafter referred to as the alleged disability onset date). Shadle claimed that she was disabled because of an injury to her ankle and the constant pain associated with that injury. Tr. 95, 104 and 163. After Shadle's applications for disability

---

2. References to "Tr.___" are to pages of the administrative record filed by the Defendant as part of his Answer on November 29, 2011.

2

insurance benefits and supplemental security income benefits were denied initially by the Bureau of Disability Determination,[3] Shadle requested a hearing before an administrative law judge. The administrative hearing was held on April 16, 2010. Tr. 31-67. At that hearing, the ALJ commented that he did not think that there was sufficient evidence prior to her date last insured to establish entitlement to disability insurance benefits and asked if she would consider amending her alleged disability onset date and withdraw her claim for disability insurance benefits. Tr. 35-36 and 63-64. The ALJ noted that it appeared there was an exacerbation of her injury after the date last insured which rendered her disabled. Id. Based on those comments, counsel for Shadle indicated she would advise Shadle of the ramifications of withdrawing her DIB claim and then counsel had an off the record conversation with Shadle. Tr. 64. After that conversation, Shadle refused to withdraw her DIB claim and the ALJ noted that decision by Shadle was fine. Tr. 65.

The elimination of Shadle's claim for disability insurance benefits would have resulted in the administrative law judge only having to consider Shadle's claim for supplemental security income benefits. A fully favorable decision with respect

---

3. The Bureau of Disability Determination is an agency of the Commonwealth of Pennsylvania which initially evaluates applications for disability insurance benefits and supplemental security income benefits on behalf of the Social Security Administration. Tr. 95 and 104.

to supplemental security income benefits, however, would not have guaranteed that Shadle would receive some amount of benefits because supplemental security income is a needs based program and an applicant may not receive such benefits if an applicant's spouse's income is above a certain level.

After the administrative hearing held on April 16, 2010, and before the administrative law judge issued a decision, counsel for Shadle sent a letter to the administrative law judge stating that Shadle agreed to amend the alleged disability onset date to April 4, 2009. The letter which is dated June 24, 2010, states in pertinent part as follows:

> Pursuant to a conversation I had yesterday [Wednesday, June 23rd] with your senior staff attorney, I relayed your proposal for amendment of onset date to Mrs. Shadle.
>
> After speaking with Mr. Shadle, she has agreed to amend her alleged onset date from December 5, 2007 to April 4, 2009 thereby withdrawing her Title II Claim. It is my understanding that a Favorable Decision will be issued in Mrs. Shadle's case as of her amended onset date of April 4, 2009.

Tr. 130.

The administrative law judge then, on June 29, 2010, issued a decision which dismissed Shadle's request for a hearing on her application for disability insurance benefits[4] and granted

---

4. 20 C.F.R. § 404.957 states in relevant part as follows: "An administrative law judge may dismiss a request for a hearing under any of the following conditions: (a) At any time before notice of the hearing decision is mailed, you or a party or parties that requested the hearing ask to withdraw the request.

4

her application for supplemental security income benefits. Tr. 24-29. The administrative law judge in the decision stated that "[t]he component of the Social Security Administration responsible for authorizing supplemental security income will advise the claimant regarding the nondisability requirements for these payments and, if the claimant is eligible, the amount and the months for which payment will be made." Tr. 29. The administrative law judge also in that decision stated that "[t]he record shows that the claimant was fully advised of the consequences of her request, including dismissal of the request for hearing regarding her claim for a period of disability and disability insurance benefits with the result that the initial determination for this claim will become final. I am satisfied that the claimant understands the effect of her requests." Tr. 24. Subsequently, it was determined that Shadle's spouse had income above $2000 per month which eliminated Shadle's eligibility for supplemental security income benefits.[5]

---

This request may be submitted in writing to the administrative law judge or made orally at the hearing."

5. The administrative law judge found that Shadle could not perform her prior relevant work but that she had the residual functional capacity to engage in the full range of sedentary work as defined in 20 C.F.R. § 416.967(a). However, based on the amended disability onset date of April 4, 2009, and applying the age categories non-mechanically, Shadle was considered an individual closely approaching advanced age. Consequently, the administrative law judge found that based on her residual functional capacity, education, age and work experience under the Medical-Vocational Guidelines (20 C.F.R., Part 404, Subpart P,

Shadle filed her complaint in this court on April 8, 2011. On June 13, 2011, the Commissioner filed a motion to dismiss Shadle's complaint. (Doc. No. 6). In opposition to the motion, Shadle alleged that she received undue pressure from the administrative law judge to withdraw her claim for disability insurance benefits and that she received inaccurate information that she financially qualified for supplemental security income benefits from an individual named "Elsa" at the local Social Security Office in Pottsville, Pennsylvania. Shadle contends that because of the pressure from the ALJ and the information from "Elsa" she decided to withdraw her DIB claim. Shadle claims that she feared if she did not do so, the ALJ would deny both her claim for DIB and SSI.

By memorandum and order of October 4, 2011, the Court deferred ruling on the Commissioner's motion to dismiss pending

---

Appendix 2) she was automatically considered disabled for purposes of SSI benefits. If the ALJ would have utilized the earlier alleged onset date of December 5, 2007, when Shadle was 48 years of age, it is not at all clear that the ALJ could have applied the age categories in such a non-mechanical manner. The Social Security regulations state that "[t]he term younger individual is used to denote an individual 18 through 49." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 201(h)(1). Under the Social Security regulations, a person 50 to 54 years of age is considered a "person closely approaching advanced age." 20 C.F.R. § 404.1563(c). The Social Security Administration considers a claimant 50 to 54 who has a severe impairment and limited work experience as someone who may not be able to adjust to other work. Id. Shadle's amended onset date of April 4, 2009, was about six months prior to her 50th birthday, allowing the ALJ to apply the age categories in a non-mechanical manner.

6

the filing of the Commissioner's answer to the complaint, the administrative record and briefs. Those documents have been filed and the Commissioner has renewed his motion to dismiss. The appeal[6] became ripe for disposition on April 2, 2012, when Shadle elected not to file a reply brief. For the reasons set forth below, the Court will grant the Commissioner's motion to dismiss.

**DISCUSSION**

In the original motion to dismiss, the Commissioner argued that "[b]ecause the ALJ dismissed [Shadle's] request for a hearing and the Appeals Council declined to review the Dismissal, there has been no 'final decision after a hearing' in this case pursuant to the [Social Security] Act" and, consequently, "the Court is without subject matter jurisdiction, and [the] matter should be dismissed." (Doc. 7, Defendant's Brief in Support of Motion to Dismiss, p. 2). The Court deferred ruling on the motion because the Commissioner, in footnote 2 of his supporting brief, (Doc. 7), appeared to concede that where there is a colorable constitutional claim, judicial review is available with respect to the Commissioner's denial of motion to reopen.

Shadle argued that the administrative law judge engaged in coercive conduct, i.e., putting pressure on Shadle to amend her

---

6. Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D. Pa. Local Rule 83.40.1.

alleged disability onset date, both at the administrative hearing and subsequent to that hearing. She also claimed that she was misled by the agency into believing that she would receive supplemental security income benefits and, as a result of that agency conduct, she withdrew her claim for disability insurance benefits. She claimed her due process rights were violated because of misrepresentations by agency personnel and that she was pressured by the administrative law judge to amend her alleged onset date and was not fully advised of the consequences of that withdrawal. The Court considered these allegations sufficient to raise a colorable constitutional claim.

The Court deferred ruling in part because the absence of the complete administrative record prevented the Court from determining whether or not the administrative law judge engaged in inappropriate behavior, including if any inaccurate statements were made about the evidence which could have suggested to Shadle that the administrative law judge was inclined to rule against her with respect to her claim for disability insurance benefits. The Court could not conclude that the administrative law judge's conduct at the hearing in conjunction with his post-hearing contact with Shadle's counsel through an individual working for him did not amount to a due process violation without first reviewing the entire administrative record.

A review of the administrative record does not support Shadle's allegations. It reveals that after discovering that she was not going to receive any benefits, Shadle attempted to reinstate her claim for disability insurance benefits. Shadle filed with the administrative law judge on August 18, 2010, a request to reopen her disability insurance benefits case and reconsider the amendment of her alleged disability onset date. Shadle at the same time filed a request for review with the Appeals Council. The Appeals Council denied Shadle's request for review and notified Shadle that under the agency's rules, she was not entitled to district court review of the administrative law judge's decision dismissing her request for a hearing on her claim for disability insurance benefits. Tr. 1-6.

The record does contain a letter from counsel for Shadle to the ALJ dated August 18, 2010, in which Shadle makes a request that the ALJ reopen her claim for DIB. Tr. 203-204. In that letter, Shadle alleges that she contacted an individual named "Elsa" at the Social Security Office who purportedly informed her that she would receive SSI benefits. However, her claim that she contacted such an individual is not substantiated by the record. In fact, the Commissioner has stated that there is no such person named "Elsa" employed at the Social Security Office in Pottsville. Furthermore, Shadle has not provided any details under penalty of perjury regarding the substance of the conversation she had with

9

"Elsa." Shadle does not indicate when, where and how (either in person or by phone) the conversation occurred and what financial information she provided to "Elsa." Interestingly, in the letter dated June 24, 2010, from counsel to the ALJ informing the ALJ that Shadle agreed to amend her alleged onset date from December 5, 2007, to April 4, 2009, there is no mention whatsoever of the conversation that Shadle had with "Elsa." Tr. 130.

One other document sheds some light on when Shadle's alleged conversation with "Elsa" could have occurred. A document filed with the Appeals Council by Shadle's counsel dated August 18, 2010, and entitled "Request for Review of Hearing Decision/Order", states in relevant part as follows:

> Several weeks after the hearing, a staff member of the Administrative Law Judge McAdam contacted my office to again request that Mrs. Shadle amend her onset date from December 2007 until April 2009 which would end her claim to Title II benefits. In an attempt to make the right decision, I advised Mrs. Shadle to contact the local district office in Pottsville to determine what she would receive, if anything, including whether or not she would receive Medicaid, if she only pursued a Title XIV claim. A caseworker at the Pottsville District Office, Elsa, informed her, after evaluating all financial information, including her husband's pay stubs and bank statements, that she would receive roughly $674.00 per month as well as Medicaid. Being satisfied with this answer, Mrs. Shadle contacted me to approve the amendment of her onset date fearing that the Administrative Law Judge would deny her case completely if she didn't amend the onset date of disability.

Tr. 200. The staff member referred to in this document had to have been the staff member contacted on June 23, 2010, mentioned

10

in the letter from Shadle's counsel to the ALJ dated June 24, 2010, because after that contact with the staff member, counsel "relayed [the ALJ's] proposal for amendment of onset date to Mrs. Shadle." Tr. 130. Consequently, Shadle would have had to have made contact with "Elsa" and made a decision to amend her onset date within at most a period of two days covering June 23 and 24, 2010.

Shadle has provided no specifics regarding the alleged conversation with "Elsa." The specific information that Shadle provided to "Elsa" is vital in determining her SSI entitlement. See 20 C.F.R. §§ 416.1100-416.1169 and 416.1201-416.1266. There is no evidence that Shadle, if she had such a conversation with "Elsa," provided an accurate statement of her husband's earnings and other assets. Notably, Shadle stated in her application for SSI benefits that her husband's earnings were only $1000 per month. Tr. 134. However, the notice advising Shadle that she was financially ineligible reveals that her husband was earning two to three times that amount. (Doc. 12, Reply Brief re Motion to Dismiss, Attachment 2, p. 2). If Shadle in fact spoke to someone at the Social Security Office, in light of her track record, it seems more likely that she did not provide accurate information about her husband's earnings, or was mistaken about the substance of the conversation. There is insufficient evidence to establish that an employee of the Social Security Administration misled

Shadle into amending her disability onset date. Likewise, the Court's review of the record does not reveal that the ALJ inappropriately pressured Shadle to amend her disability onset date or engaged in any other type of inappropriate behavior.

As the party asserting that the court has jurisdiction to review the Commissioner's discretionary decision not to reopen her disability insurance claim, Shadle "bears the burden of showing that her claims are properly before [us]." Lucas v. Astrue, 2011 WL 5154106, at *3 (W.D. Pa. 2011)(citing Development Fin. Corp. v. Alpha Housing & Health Care, 54 F.3d 156, 158 (3d Cir. 1995). Shadle's conclusory allegations, without any evidentiary support in the record, are not enough to satisfy her burden. See Kinash v. Callahan, 129 F.3d 736, 738 (5th Cir 1997)(merely alleging a constitutional violation is not enough to confer jurisdiction to review the Commissioner's refusal to reopen a case).

After reviewing the administrative record and the briefs of counsel, the Court concludes that Shadle has not raised a viable constitutional claim and Shadle's complaint will be dismissed for lack of subject matter jurisdiction.

**AND NOW**, this 1st day of February, 2013, **IT IS HEREBY ORDERED THAT:**

> 1. The Commissioner's motion to dismiss Shadle's complaint for lack of subject matter jurisdiction

is **GRANTED**.

2. Shadle's complaint is **DISMISSED**.

3. The Clerk of Court shall **CLOSE** this case.

_____
**United States District Judge**